IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


MIDWEST DRILLED FOUNDATIONS & )
ENGINEERING, )
)
Plaintiff, )
)
v. ) No. 10 C 5446
)
REPUBLIC SERVICES, INC., )
)
Defendant. )


# <u>OPINION AND ORDER</u>


Plaintiff Midwest Drilled Foundations & Engineering, Inc. provided

drilling services for monitoring wells at a landfill in Hinsdale, Illinois (the

"Landfill") owned by Congress Development Company ("CDC"). Defendant

Shaw Environmental, Inc. contracted with "Allied Waste" (n/k/a Republic

Services, Inc.)[1] to provide environmental services related to the closing of the

_____

[1]Shaw provides a copy of its contract with Allied Waste in which Allied
Waste states it does business as Hillside Landfill or Congress Development Co.
Landfill. Without clarifying Allied Waste's relationship with CDC, Shaw asserts
that Allied Waste is not the owner of the Landfill, that it is CDC that owns the
Landfill. Plaintiff refers to Allied Waste as the owner of the Landfill. For present
purposes, it will be assumed that Allied Waste is a parent of CDC, an owner of the

Landfill. In November 2008, drilling equipment that plaintiff was using at the Landfill was damaged while plaintiff's employees were away from the Landfill. The damage apparently was caused by a vehicle, but whose vehicle is unknown. Claims against other defendants have previously been resolved. Plaintiff contends defendant Shaw is responsible for the damage to the drill based on theories of negligence, premises liability, and *res ipsa loquitur*. Defendant contends it is not liable because it did not have responsibilities at the Landfill that would support any of plaintiff's theories of liability. Defendant also contends that any liability it would have was released in a settlement plaintiff entered into with others, including the Landfill's owner. Presently pending is Shaw's motion for summary judgment. The parties agree that the substantive law of Illinois applies to all the claims, as well as construction of pertinent agreements.

In October 2009, this case was filed in the Circuit Court of Cook County, Illinois, naming Republic Services, CDC, and Shaw as defendants. In August 2010, after Republic Services and CDC were dismissed from the case, remaining defendant Shaw removed the case to federal court based on diversity jurisdiction.

---

Landfill, or otherwise an entity that controls the Landfill.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95

(7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Raimonde Drilling Corporation contracted with CDC to drill 22 deep and shallow groundwater monitoring wells at the Landfill. Shaw provided Raimonde with a Plan mapping out well locations and depths. A Shaw representative observed the wells being drilled and, after drilling was complete, immediately measured the groundwater in the well. The Shaw representative's duties included monitoring for methane gas in order to avoid a possible explosion. In Fall 2008, Raimonde was falling behind schedule so it subcontracted with plaintiff to drill wells. There was no written subcontract. At the site where the accident occurred, plaintiff had a leased crawler drill rig that had been operated by a drill rig operator and a drill rig assistant, both employed by plaintiff. Shaw employee Ted Augustine monitored the drilling. At the end of the day on November 4, 2008, plaintiff left the drill rig it was using at a particular site that

was being drilled.  When plaintiff's employees returned on November 6, the drill rig was in the same place, but had been damaged.  Plaintiff did not perform any further drilling at the Landfill.  Raimonde otherwise completed the remaining wells.

In January 2010, while this lawsuit was still pending against Republic Services (Allied Waste), CDC, and Shaw in state court, Raimonde and plaintiff reached agreement as to how much Raimonde would be paid for the subcontracting services plaintiff had provided.  Plaintiff provided a document entitled "Release and Settlement of Claim" (the "Release") which was dated, signed, and notarized January 29, 2010.  On the same date, Raimonde sent plaintiff a check for the agreed-upon amount.  The Release provides in pertinent part:

> For the consideration of Twenty Five Thousand Dollars and Zero Cents ($25,000.00), Gene E. Sheady and Midwest Drilled Foundations & Engineering, Inc. (hereafter, the "RELEASORS") on behalf of RELEASORS and their heirs, executors, partners, administrators and assigns, and related entities do hereby release acquit and forever discharge Raimonde Drilling Corporation (hereafter, "RDC") and its past and present officers, agents, employees, insurers, legal representatives, and any and all parent and related entities, assigns, and successors, as well as any person or entity whom RDC was performing work on behalf of (including but not limited to owners of property, general contractors, and other subcontractors) at the project, known as the Hillside landfill aka Congress Development Company/Allied Waste (hereafter

collectively referred to as "RELEASEES"), from any and all actions, causes of action claims and demands, breach of contract claims, damages, cost, loss of services, expenses, and compensation on account of or in any way growing out of any work performed by RELEASORS. In addition, RELEASORS expressly release RELEASEES from all known and unknown injuries and property damage and lost compensation they have suffered as a result of the RELEASEES' actions, negligence, or their unwillingness to pay invoices and do hereby agree to indemnify and save harmless the said RELEASEES from all further claims and demands, costs or expenses arising out of the injuries or damages sustained by RELEASORS, including but not limited to those charges asserted in invoices to RDC for work performed in Hillside, Illinois during September and November 2008. The undersigned agrees to be responsible for, and to satisfy out of proceeds of this settlement, any and all liens, known and unknown, attorney fees, and legal costs, incurred by, or on behalf of the undersigned.

*  *  *

It is expressly warranted by RELEASORS that no promise of inducement has been offered except as herein set forth; that this release is executed without reliance upon any statement or representation of the RELEASEES or their representatives concerning the nature and extent of this release of and/or legal liability therefore; and that acceptance of the consideration set forth herein is in full accord and satisfaction of disputed claims for which liability is expressly denied. It is further understood that RELEASORS are waiving any right to file a lien, to prosecute any claim, or collect any money against not only RDC but also the owner of the property at Hillside Landfill and all of the other contractors who performed work at the Hillside Landfill. RELEASORS represent and warrants [sic] that they have had the benefit of legal counsel in settling this matter and in entering into this agreement.

> RELEASORS will make no claim in the future that this
> release is wholly or partially invalid and agree to pay the
> reasonable attorney fees of RELEASEES in the event that
> such a claim is unsuccessfully made. It is in the intent of
> RELEASORS to have the scope of this Release construed as
> broad as possible.

Shaw contends that, as a contractor performing work at the Landfill, the Release released the claims brought against it in this lawsuit. Plaintiff does not address the merits of this contention. Prior to removal, this issue was raised by Shaw in a Rule 2-619 (735 ILCS 5/2-619(a)(6)) motion to dismiss that was denied by the state court. Plaintiff asserts that, based on the state court ruling, reliance on the Release is "barred by issue preclusion." It also asserts that "[i]t is improper for Shaw to relitigate this issue and compel this Court to reconsider settled law of the case."

First, it is clear that issue preclusion (collateral estoppel) does not apply. Illinois state law applies regarding the preclusive effect of the state court ruling. 28 U.S.C. § 1738; *Rock Energy Co-op. v. Vill. of Rockton*, 614 F.3d 745, 750 (7th Cir. 2010). One requirement for applying issue preclusion is that there has been a final judgment on the merits. *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010); *Vennet v. Am. Intercontinental Univ. Online*, 2005 WL 6215171

*3-4 (N.D. Ill. Dec. 22, 2005). No judgment having been entered as to the claims against Shaw, issue preclusion cannot apply.

Law of the case applies to rulings made in state court prior to the removal of a case. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1037 (7th Cir. 1998); *FDIC v. Parzygnat*, 2011 WL 3704731 *5 (N.D. Ill. Aug. 23, 2011). Law of the case does not conclusively prevent a court from revisiting a prior ruling in the case. It is appropriate to revisit a prior ruling if circumstances have changed or even on the sole basis that the prior ruling may be in error. *See Galvan v. Norberg*, 678 F.3d 581, 2012 WL 1570876 *6 (7th Cir. May 7, 2012); *Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 739 (7th Cir. 2010). Law of the case is discretionary and no more than a presumption, but a prior judge's ruling ordinarily will not be changed just because the new judge disagrees with the ruling of the prior judge. *Galvan*, 678 F.3d at ___, 2012 WL 1570876 at *6. One type of changed circumstance that is appropriate for reconsidering an issue is that the issue is being presented in a new posture, such as on a motion for summary judgment following a prior ruling on a motion to dismiss. *See id.* (citing *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005)); *Webb v. CBS Broad.,*

*Inc.*, 2011 WL 4062488 *3 (N.D. Ill. Sept. 13, 2011); *Vision Center Nw., Inc. v. Vision Value, LLC*, 673 F. Supp. 2d 679, 684 (N.D. Ind. 2009).

Here, the prior ruling was on a Rule 2-619 motion to dismiss, while the present ruling is on a motion for summary judgment. In response to the motion to dismiss, plaintiff had raised various arguments including facts extrinsic to the Release that were potentially in dispute. The state court's written order does not identify the ground for the ruling, only stating:. "Defendant, Shaw Environmental's Motion to Dismiss is hereby denied." Neither side makes any representation regarding whether the state judge made any statement in court indicating the basis for the ruling.

An Illinois 2-619 motion is not equivalent to a motion pursuant to Fed. R. Civ. P. 12(b)(6). Instead, Rule 2-619 is a means to raise affirmative issues beyond the pleadings, including defenses, and to support the motion's factual contentions with affidavits. The asserted facts must be conclusively supported by the movant with a standard analogous to summary judgment being applied. Denial of a Rule 2-619 motion does not conclusively determine the issue; it instead leaves the issue for trial. *See Lipscomb v. Sisters of St. Francis Health Servs., Inc.*, 343 Ill. App. 3d 1036, 799 N.E.2d 293, 296-97 (1st Dist. 2003); *Mio v. Alberto-Culver*

*Co.*, 306 Ill. App. 3d 822, 715 N.E.2d 309, 311 (2d Dist. 1999); *In re J.M.*, 245 Ill. App. 3d 909, 613 N.E.2d 1346, 1354 (2d Dist. 1993). There would only be a conclusive determination in plaintiff's favor if plaintiff had successfully moved to strike the affirmative defense of release. Even now, plaintiff does not move for partial summary judgment as to the release defense. Just as denial of a Rule 2-619 motion leaves the issue for trial; it also leaves the issue open to be considered on summary judgment in light of further factual development and discovery that occurs following the denial of the 2-619 motion to dismiss. It is appropriate to consider the merits of the Release issue as presently raised by defendant on summary judgment.

Since plaintiff does not respond by addressing the merits, any legal contentions contrary to defendant's could be considered waived. While plaintiff should have alternatively addressed the merits, it does provide the brief it filed in opposing the Rule 2-619 motion. While incorporating another brief generally is an inappropriate method of briefing--and plaintiff does not expressly request that the arguments in the prior brief be considered--the legal contentions raised there will be considered. Moreover, summary judgment generally is not to be granted based on a failure to respond; it would still have to be considered whether

defendant's legal contentions as to the Release and the facts before the court on summary judgment are an appropriate basis for granting a judgment. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994), *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993); *HSBC Bank USA, NA v. Thomas*, 2012 WL 1946821 \*1 (C.D. Ill. May 30, 2012); *Richardson v. Kitt*, 2012 WL 1577500 \*4 (N.D. Ind. May 4, 2012); *Cherry v. City of Chicago*, 833 F. Supp. 2d 907, 911 (N.D. Ill. 2011).

In the summary judgment motion, Shaw relies on the last paragraph of the Release, focusing on the language stating that the Release applies to "not only RDC but also . . . all of the other contractors who performed work at the Hillside Landfill." It also points to the last sentence: "It is in the intent of RELEASORS to have the scope of this Release construed as broad as possible." In response to the Rule 2-619 motion, plaintiff raised three arguments. It contended that (a) circumstance and negotiations support that, despite language Raimonde placed in the Release, the Release was intended to only apply to plaintiff's claims against Raimonde; (b) the language relied on by defendant is limited by the more specific definition of releasee contained in the first paragraph of the Release; and (c) the

damage to the drill is not damage "growing out of any work performed by RELEASORS."

The first argument will not presently be considered because plaintiff's Local Rule 56.1 response to defendant's facts and plaintiff's statement of additional facts do not assert any facts regarding negotiating the Release. There is an affidavit attached to the Rule 2-619 brief, but it is not relied on in plaintiff's present Local Rule 56.1 statement. Present consideration will be limited to considering the language of the Release itself, including the two other arguments plaintiff previously raised.

The general rule is that a release is construed narrowly. *Martin Oil Serv., Inc. v. Koch Ref. Co.*, 718 F. Supp. 1334, 1353-54 (N.D. Ill. 1989). Here, though, the Release expressly states it is to be construed as broadly as possible and it clearly is a general release. As broadly as *possible*, though, would not include a construction that is inconsistent with Illinois law. Illinois courts have interpreted a provision of the Illinois Contribution Act as requiring that an additional tortfeasor who is not a party to a release will not be released unless identified in the release with sufficient specificity. 740 ILCS 100/2(c); *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill. 2d 196, 461 N.E.2d 361, 364 (1984); *Wreglesworth ex rel.*

*Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023, 738 N.E.2d 964, 970 (1st Dist. 2000); *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 688 N.E.2d 364, 369-70 (2d Dist. 1997). Cases have held that naming a class of others, such as agents of a named party, is sufficiently specific. *Id.* at 370; *Farmers Auto. Ins. Ass'n v. Wroblewski*, 382 Ill. App. 3d 688, 887 N.E.2d 916, 924 (1st Dist. 2008).

The last paragraph of the Release refers to "all of the others who performed work at the Hillside Landfill." That language, however, must be read as limited by the more specific description of releasors recited in the first paragraph of the Release. *See Nationwide Mut. Fire Ins. Co. v. T & N Master Builder & Renovators*, 2011 IL App (2d) 101143, 959 N.E.2d 201, 209 (2011); *Mayhew v. Indus. Comm'n*, 304 Ill. App. 3d 557, 710 N.E.2d 909, 914 (5th Dist. 1999); *Kelly v. McGraw-Hill Cos.*, 2012 WL 2006727 *6 (N.D. Ill. June 5, 2012). As provided in the first paragraph, the Release is limited to contractors or subcontractors for whom Raimonde was "performing work on behalf of" at the Landfill. Plaintiff contends Raimonde was not working on behalf of Shaw because Raimonde's contract was with Allied Waste. In *Polsky*, the court construed "any person acting on [party's] behalf" as anyone working at that party's direction, regardless of whether there was an agency or independent contractor

relationship. 688 N.E.2d at 370. Here, the Release language is distinguishable from that in *Polsky*. Here the language is "performing *work* on behalf *of*," not "*acting* on behalf." Even assuming Raimonde was acting at Shaw's direction,[2] Raimonde was performing its work on behalf of Allied Waste and/or CDC, which owned and/or controlled the Landfill. Raimonde's work was not being done for-- that is, "on behalf of"-- Shaw even if Shaw provided direction as to where or even how Raimonde should drill. Raimonde was not a subcontractor of Shaw so the work was not being performed for Shaw in that sense. Also, Shaw was not the owner of the property who was benefitting from the performance. Raimonde's work was not performed for Shaw in that sense. Both Raimonde and Shaw were performing work on behalf of Allied Waste/CDC, not on behalf of each other. Shaw is not entitled to summary judgment based on the Release.

As evidence of Shaw's general duties at the Landfill, plaintiff relies on Shaw's contract with Allied Waste, in particular a July 29, 2008 work order that would have been in effect during the time period plaintiff was providing services at the Landfill. Although Shaw repeatedly relies on its contract, including the July

---

[2]For purposes of the merits of the tort claims, Shaw contends it was not directing Raimonde or plaintiff's work, while plaintiff contends Shaw was directing the work.

2008 work order, as evidence of its duties at the Landfill, *see, e.g.*, Def. Stmt. of Facts [33] ¶¶ 5, 7-9. 12-20, Shaw also repeatedly objects to plaintiff relying on the contract documents as evidence of Shaw's duties, *see, e.g.*, Def. Resp. to Stmt. of Additional Facts [42] ¶¶ 1-2, 4-12.[3] Absent conclusive evidence that performance varied from the terms of the contract, it may be reasonably inferred from the terms of the contract that Shaw performed duties assigned to it under the contract. *See O'Neill v. Ford Motor Co.*, 2009 WL 4757268 *13-14 (N.D. Ill. Dec. 9, 2009).

The work order provides in part: "Shaw personnel will oversee the construction of the final cover system, landfill gas collection system and perimeter toe trench. Additionally, Shaw personnel will track construction production rates (i.e. quantity of FML pipe installed, etc.), track the length of time landfill gas extraction wells are off-line, and heavy equipment usage by various companies (i.e. Reliable vs. Congress)." For various work plans, Shaw was to "coordinate" various consultants and track the progress of required submittals. Shaw was also to develop and implement certain work plans. As to groundwater assessment

---

[3]It may be that, as to some or most of these paragraphs, Shaw only objects to plaintiff's specific characterization of Shaw's duties under the contract. Shaw's general and rote objections, though, fail to identify the specific factual assertions with which it disagrees. That is inconsistent with the requirements of Local Rule 56.1. *See Benefit Sys. & Servs., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 2009 WL 1106948 *4 (N.D. Ill. April 22, 2009).

monitoring: "Shaw will assist Allied with developing scope of services and selecting drillers to perform the above mentioned drilling. Shaw will meet with the selected driller and CDC personnel prior to drilling at the selected drilling locations and determine if any modifications to the drilling locations are required due to field conditions."[4] It is expressly stated that "[a]ll drilling will be performed under the direction of an experienced geologist or engineer," which would be a Shaw employee. Testimony of Raimonde's President supports that Raimonde would suggest which sites to drill on particular days, but would get Shaw's permission before moving to the next site.

Shaw cites the "Job-Site Safety/Control of Work" provision of its original contract with Allied which provides:

> CONSULTANT shall be responsible only for the activities of the Consultant Parties. CONSULTANT will not direct, supervise or control the work of other consultants and contractors or their subcontractors. CONSULTANT'S Services do not constitute any form of guarantee or insurance with respect to the performance of other consultants and contractors or their subcontractors. CONSULTANT does not assume responsibility for the means and methods employed

_____

[4]Raimonde's President testified that she received a request for proposal from Shaw. It was her understanding that Shaw recommended who to select, but Allied Waste made the final decision.

by others in their work. Insofar as job site safety is concerned, CONSULTANT is responsible only for the health and safety of the Consultant Parties. Nothing herein shall be construed to relieve COMPANY or any other consultants or contractors from their responsibilities for maintaining a safe job site. CONSULTANT shall not advise on, issue directions regarding, or assume control over safety conditions and programs for others at the job site. Neither the professional activities of CONSULTANT, nor the presence of the Consultant Parties, shall be construed to imply that CONSULTANT controls the operation of others or has any responsibility for job site safety. The Consultant Parties, however, shall at all times comply with all Applicable Laws and all job site safety and other procedures established by COMPANY from time to time.

The contract does not define or otherwise reference "Consultant Parties," for whom Shaw has supervisory and safety responsibilities. In any event, the July 2008 work order that was in effect when plaintiff worked at the Landfill, amended the original contract and provided that Shaw had oversight responsibility for construction of the final cover system and other specified construction. The work order specifically tasks Shaw with responsibility for groundwater assessment monitoring, including meeting with drillers to "determine . . . any modifications to the drilling locations . . . required due to field conditions." It also provides that drilling work is

to be performed under the direction of a geologist or engineer, which would be a Shaw employee.

Plaintiff employees Matt Gregor and Scott Koney were working the crawler rig on November 4, 2008. Shaw employee Ted Augustine was monitoring the drilling. At the end of the day, the rig was left next to a road on which 30-50 trucks passed each hour. Augustine was aware this many trucks passed and that the rig was close enough to the road that there could be as little as two feet of clearance. Augustine recognized that there was a risk the rig would be hit by a vehicle. Gregor asked Augustine if it was okay to leave the rig at this location. After contacting someone else, Augustine gave permission to leave it there.[5] Augustine stated in a memorandum that he placed an orange cone next to the rig to help slow traffic. When plaintiff's employees returned on November 6, the rig had been damaged.

_____

[5]In Shaw's response to plaintiff's statement of additional facts [42] ¶ 24, Shaw objects that Gregor's testimony supporting these facts is not undisputed. This objection misconstrues summary judgment procedure. On defendant's summary judgment motion, all genuine factual disputes are resolved in plaintiff's favor. Even though there is contrary evidence, for purposes of ruling on defendant's motion, Gregor's testimony favoring plaintiff is assumed to be true.

Contrary to defendant's contention on summary judgment, evidence supports that defendant was responsible for supervising plaintiff's drilling work, including granting permission for the locations to be drilled on each particular day. Shaw was responsible for determining whether field conditions were consistent with drilling at a particular location. On the day at issue, Shaw determined that the crawler rig could be left in the location where it was later hit.

The essential elements of a common law negligence claim are "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. " *Simpkins v. CSX Transp., Inc.*, 2012 IL 110,662, 965 N.E.2d 1092, 1096 (2012) (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 856 N.E.2d 1048, 1053 (2006)). "The concept of duty in negligence cases is involved, complex, and nebulous." *Simpkins*, 965 N.E.2d at 1096.

> . . . As we have held in the past, "[t]he touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." (Emphasis added.) *Marshall*, 222 Ill. 2d at 436; 856 N.E.2d 1048; *see also Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226, 938 N.E.2d 440 (2010); *Forsythe v. Clark USA, Inc.*, 224

Ill. 2d 274, 280-81, 864 N.E.2d 227 (2007). The "relationship" referred to in this context acts as a shorthand description for the sum of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Krywin*, 238 Ill. 2d at 226, 938 N.E.2d 440; *Forsythe*, 224 Ill. 2d at 281, 864 N.E.2d 227; *Marshall*, 222 Ill. 2d at 436-37, 856 N.E.2d 1048. The determination of such a "relationship," as sufficient to establish a duty of care, requires considerations of policy inherent in the consideration of these four factors and the weight accorded each of these factors in any given analysis depends on the circumstances of the case at hand. *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 374-75, 562 N.E.2d 967 (1990).

*Id.* at 1097.

On summary judgment it is taken as true that Shaw had control over the location of drill sites and where to leave the rig while idle. Also, evidence supports that plaintiff's employees could not move the compressor component of the rig on their own. They needed a bulldozer to move the compressor and they would ask Shaw to make arrangements for a bulldozer. Evidence supports that the risk of damage was foreseeable to defendants' employee, as well as foreseeable to plaintiff's employees. Under the circumstances, there is enough evidence to contend at trial that Shaw had a duty to have the rig placed in a safe location.

Evidence adequately supports that leaving the rig close to a road that had heavy truck traffic was a proximate cause of damage to the rig. There is no evidence that the cause of damage was solely negligent driving of the vehicle that hit the rig. In these circumstances, leaving the rig parked in a location at high-risk of being hit is a proximate cause of the damage.

Plaintiff presents sufficient evidence that it has incurred damages in the form of repair costs and having to make continued lease payments for an unusable rig. At trial, plaintiff will have to establish the amount of its damages. To defeat summary judgment, though, it is sufficient to establish that some damage has occurred. *See Calnin v. Hilliard*, 2008 WL 336892 *6 (E.D. Wis. 2008); *City of Chicago v. Reliable Truck Parts Co.*, 822 F. Supp. 1288, 1295 (N.D. Ill. 1993); *cf. Heller Fin. Leasing, Inc. v. Gordon*, 2005 WL 2756113 *4 (N.D. Ill. Oct. 19, 2005). Also, the damage has occurred even if plaintiff has not yet paid the repair bills. There is no evidence that the repair or lease expenses have been waived or otherwise forgiven by the lessor of the rig.

The negligence claim will not be dismissed.[6]

_____

[6]The parties do not separately address the negligent supervision claim. It will not be separately considered. In preparing the final pretrial order, though,

As to premises liability, Illinois follows § 343 of the Restatement

(Second) of Torts (1965) ("Restatement") as to a possessor of land being liable for

physical harm. *Caburnay v. Norwegian Am. Hosp.*, 2011 IL App (1st) 101,740,

963 N.E.2d 1021, 1031 (2011), *appeal denied*, ___ N.E.2d ___ (Ill. May 30,

2012); *O'Connell v. Turner Constr. Co.*, 409 Ill. App. 3d 819, 949 N.E.2d 1105,

1108-09 (1st Dist. 2011). A possessor of land is "a person who is in occupation of

the land with intent to control it." *O'Connell*, 949 N.E.2d at 1109 (quoting

Restatement § 328E(a)). The two requirements are "occupation and control of the

*land*." *O'Connell*, 949 N.E.2d at 1109 (emphasis in original). There must be

control of the premises, not just control over individuals or activities on the

premises. *Id.* at 1110. A contractor who controls some activity on the premises is

not liable as a possessor of land; to have such liability, the contractor must have

"the entire charge of the land." *Id.* (quoting Restatement § 383).

Cases cited by plaintiff are not on point. In both *Deibert v. Bauer Bros.*

*Constr. Co.*, 141 Ill. 2d 430, 566 N.E.2d 239 (1990), and *Ralls v. Vill. of Glendale*

---

plaintiff must decide whether it is going to continue to pursue both a negligence
claim and negligent supervision claim. If so, it must provide proposed jury
instructions for both.

*Heights*, 233 Ill. App. 3d 147, 598 N.E.2d 337 (2d Dist. 1992), it is a given that the contractors were possessors of the land without any discussion of the criteria for determining a party is a possessor of land. In *Clifford v. Wharton Bus. Group, L.L.C.*, 353 Ill. App. 3d 34, 817 N.E.2d 1207 (1st Dist. 2004), the contractor was also the owner of the property.

Plaintiff does not submit evidence establishing that Shaw had complete control over the Landfill. The Count 12 premises liability claim will be dismissed.

"When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. This in essence is the doctrine of res ipsa loquitur, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." *Metz v. Cent. Ill. Elec. & Gas Co.*, 32 Ill. 2d 446, 207 N.E.2d 305, 307 (1965) (citations omitted). *Accord Raleigh v. Alcon Labs., Inc.*, 403 Ill. App.

3d 863, 934 N.E.2d 530, 536 (1st Dist. 2010). "Before *res ipsa loquitur* can be applied, it must be shown that the injury can be traced to a specific instrumentality or cause for which the defendant is responsible or that the defendant was responsible for all reasonable causes to which the accident could be attributed." *Id.* (quoting ***Napoli v. Hinsdale Hosp.***, 213 Ill. App. 3d 382 572 N.E.2d 995, 998 (1991)).

Plaintiff has not shown the specific vehicle that caused the damage to the rig nor has it shown that Shaw controlled the vehicle. The Count 11 *res ipsa* claim will be dismissed.

Prior to submitting the proposed final pretrial order, the parties shall attempt to settle this case. Within 14 days, plaintiff shall make a demand for settlement.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [30] is granted in part and denied in part. Counts 11 and 12 are dismissed. In open court on August 30, 2012 at 11:00 a.m., the parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed *voir*

*dire* questions, motions *in limine* with supporting briefs, and proposed jury instructions.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: JUNE 28 , 2012